IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHALMON J. STENNIS and <br> DR. LAUREN STENNIS, DDS <br><br> *Plaintiffs*, <br><br> v. <br><br> THE MOORINGS OF OAK HARBOR <br> PROPERTY OWNERS' ASSOCIATION, <br> INC., COMMUNITY MANAGEMENT, LLC, <br> MICHAEL FELGER, and KELLY <br> CAMPBELL <br><br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §     CIVIL ACTION NO. 2:24-cv-269 |

## COMPLAINT

### INTRODUCTION

1.

Plaintiffs, Shalmon J. Stennis and Dr. Lauren Stennis, DDS, ("Plaintiffs") residents of St. Tammany Parish, Louisiana, bring this action against Defendants, The Moorings of Oak Harbor Property Owners' Association, Inc., Community Management, LLC, Michael Felger, and Kelly Campbell for injunctive, declaratory, and monetary relief for discrimination on the basis of race and in violation of the Fair Housing Act, the Civil Rights Act of 1866, and related, supplemental state law claims. Defendants have assessed a total of $22,200.00 in discriminatory fines against Plaintiffs in just under one year.

### JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

This Court also has supplemental jurisdiction to consider Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of facts.

4.

Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

5.

Venue is proper under 28 U.S.C. § 1391 because the events alleged in this complaint occurred in St. Tammany Parish, Louisiana.

## PARTIES

6.

Plaintiffs are residents of Slidell, St. Tammany Parish, Louisiana, residing at Slidell, Louisiana.

7.

Defendant, The Moorings of Oak Harbor Property Owners' Association, Inc. ("The Moorings") is a domestic corporation with its principal address in St. Tammany Parish, Louisiana. The Moorings is a homeowner's association ("HOA") and governs the Plaintiffs' residential community. The Moorings, as an HOA, is subject to the Fair Housing Act, 42 U.S.C. § 3601 et seq.

8.

Defendant, Community Management, LLC ("Community"), is a domestic property management firm with its principal address in Livingston Parish, Louisiana. Community acts as the property manager for The Moorings, in Slidell, Louisiana, and has done so at all times relevant in this Action.

9.

Defendant, Michael Felger ("Felger"), is a resident of St. Tammany, Louisiana. Felger is the president of The Moorings and resides at 149 Islander Drive in Slidell, Louisiana.

10.

Defendant, Kelly Campbell ("Campbell"), is a resident of St. Tammany, Louisiana. Campbell is the treasurer of The Moorings and resides at 205 Solomon Drive in Slidell, Louisiana.

11.

In committing each of the discriminatory or unlawful acts alleged in this Complaint, each Defendant acted as the agent or co-conspirator of each other Defendant.

## FACTS

12.

On November 2, 2021, Plaintiffs began construction on their family home located in The Moorings of Oak Harbor. After completion of construction, Plaintiffs moved into their new home by February 2023. Immediately after Plaintiffs moved into their new community, Defendants engaged in a pattern and practice of harassing, taunting, and threating Plaintiff, based on race, thereby creating a racially hostile environment. Thus, Plaintiffs were, and continue to be, prevented from enjoying housing rights and holding their personal property due to the interference, coercion, and intimidation of Defendants.

13.

Prior to Plaintiffs' move into the community, The Moorings treasurer, Defendant Campbell, initiated the pattern and practice of racial harassment against Plaintiffs by weaponizing the Sherrif's Office. On May 7, 2022, Campbell called 911 on Plaintiff Shalmon Stennis to report that Plaintiff's contractors were double-parked on the street.

14.

It became evident that there was a coordinated effort to harass and deter Plaintiffs from moving into The Moorings of Oak Harbor because Plaintiffs continued to be harassed by various neighbors prior to moving into the community. On March 27, 2022, neighbor Daryl Bottenhagen called the police on Plaintiff Shalmon Stennis after Plaintiff asked Bottenhagen to stop using the construction dumpster located on Plaintiff's property. Bottenhagen became hostile with Plaintiff, causing Plaintiff to strike Bottenhagen in self-defense. No charges were filed against Plaintiff.

15.

On August 15, 2022, two unknown neighbors broke into Plaintiffs' home while it was still under construction.

16.

After moving into the community, Plaintiffs began to receive numerous, frivolous, HOA violations from Defendant Community, acting on behalf of The Moorings. First, Plaintiffs were cited for having unused pilings left on the premises. However, as evidenced by the original building plans that were approved by The Moorings, Plaintiffs' pool was pending construction, and said pilings were to be used for such purpose. Plaintiffs advised The Moorings and Community of these plans. However, The Moorings and Community continued to levy Plaintiffs with fines related to unused pilings. As of this date, the fines are still in due and owing.

17.

Second, Plaintiffs received multiple fines for having a visible slab. The Moorings and Community advised Plaintiff that the slab needed to be painted and enclosed with fill in/landscaping. However, there is photographic evidence of visible slabs on numerous homes in the community that belong to white families.

18.

Nevertheless, the particular area of the slab under dispute is part of the approved pool construction and would be remedied after the said construction is completed. Plaintiffs advised The Moorings and Community of these plans. However, The Moorings and Community continued to levy Plaintiffs with fines related to unused pilings. As of this date, the fines are still in due and owing.

19.

Third, Plaintiffs were cited for not having the proper screening around Plaintiffs' garbage can. However, this area is likewise part of the pool construction, and would be remedied after completion of the same. Plaintiffs advised The Moorings and Community of these plans. However, The Moorings and Community continued to levy Plaintiffs with fines related to unused pilings. As of this date, the fines are still in due and owing.

20.

Notably, Plaintiffs' garbage can is only visible if one walks down to the very end of the cul-de-sac of Plaintiffs' street, where there is simply a canal and no other homes. Thus, Plaintiffs' garbage can is not visible to the public. On numerous occasions, Defendant Felger was observed behind Plaintiffs' home taking photographs. As such, this shows that Felger, The Moorings and Community are actively looking for issues in order to cite and harass Plaintiffs.

21.

Nonetheless, there is evidence of numerous instances where garbage cans belonging to other white neighbors are visible from the street, and no violation notices were issued as a result. In fact, the photograph attached to the violation notice given to Plaintiffs was heavily cropped in order to exclude the garbage can that was visible at the home of Plaintiffs' white, next-door neighbor. This further shows a coordinated effort to harass and discriminate against Plaintiffs based on race.

22.

Fourth, Plaintiffs were cited for having a visible water hose. However, there is photographic evidence of a visible water hose at the home of Defendant Campbell, HOA board member, Jimmy Snipes, and at several other homes in the community that belong to white families.

23.

Fifth, Plaintiffs were unfairly, and without due process, punished by having their access to the community revoked on several occasions. The Moorings and Community acted without authority to deactivate Plaintiffs' decal that is needed to automatically enter the gates of the community. A security officer advised Plaintiffs that said access was revoked due to past due fines purportedly owed by Plaintiffs. However, the Covenants to the community confer no power on The Moorings to unilaterally revoke access for past due fines. As of this date, Plaintiffs cannot access the property they purchased and have to wait for someone else to open the gate in order to enter the community.

24.

While trying to address the aforementioned issues, Plaintiffs were met with finger pointing by The Moorings to Community, and Community back to The Moorings, without providing any sort of answers or assistance, leaving Plaintiffs feeling as though they are being targeted based on race.

25.

Specifically, Denise Scipione of Community Management consistently advised that she was acting pursuant to Defendant Felger's requests. Also, when Plaintiffs presented Ms. Scipione with information to dispute alleged violations, she would advise that decisions would have to be approved by Defendant Felger. Thus, this shows that Defendant Felger took a personal interest in harassing Plaintiffs because all HOA decisions require approval from the board as a whole. Furthermore, Felger also acted as a property manager despite Community being hired to do such work. In other words, Felger acted with both legislative and executive powers. Stated a different way, Defendant Felger acted as the officer, judge, jury, and executioner.

26.

On January 25, 2024, Defendants continued to harass Plaintiffs by sending a "final warning" advising of a total balance of $22,200.00 (twenty-two thousand two hundred dollars) owed to The Moorings. This total amount has been assessed in just under one year.

27.

On numerous occasions, Plaintiff Shalmon Stennis was referred to as "n__ger" by several neighbors. On a different occasion, a white neighbor, Michael Deltoro, told Plaintiff Shalmon Stennis "I don't want your boys talking to my girls." However, at the time, the neighbor's daughters were 13, 16, and 19 years old. Whereas, Plaintiffs' sons were only 6 and 7 years old.

28.

Thus, Mr. Deltoro implied that Plaintiffs' sons were sexual predators because of their race, despite them being little boys that haven't yet reached puberty. Meanwhile, two of Mr. Deltoro's daughters were teenagers and one was a grown woman.

**INJURY**

29.

For the past two years, Defendants and other white neighbors subjected Plaintiffs to severe and pervasive harassment, threats, and intimidation because of race.

30.

Defendants and other neighbors created a hostile environment that unreasonably interfered with Plaintiffs' right to use and enjoy their home.

31.

The Moorings and Community failed to take prompt action to correct or end their own discriminatory conduct, as well as the conduct of Defendant Felger and Defendant Campbell. Defendants were aware that Plaintiffs were being subjected to extensive and unwelcome harassment based on race because it was orchestrated and coordinated by Defendants.

32.

Defendants, acting individually and in concert with others, directly and through their agents, have engaged in a pattern or practice of discrimination and harassment based on race.

33.

As a result of the Defendants' unlawful acts, Plaintiffs suffered a violation of their civil rights, loss of the use and enjoyment of their property, and emotional distress, including anxiety, fear, humiliation, and degradation.

34.

Accordingly, Plaintiffs are entitled to compensatory damages in excess of $250,000.00.

35.

There now exists an actual controversy between the parties regarding duties under federal and state law. Accordingly, Plaintiffs are entitled to declaratory relief.

## CLAIMS

### FIRST CLAIM

**Fair Housing Act**

**(42 U.S.C. § 3601 et seq.)**

36.

Plaintiffs reallege and incorporate by reference all previous paragraphs on this complaint.

37.

Defendants have injured Plaintiffs by committing the aforementioned discriminatory housing practices based on disparate treatment in violation of the Fair Housing Act, 42 U.S.C §§ 3604(b) and 3617, C.F.R. §§100.400, 100.600, 100.50(b)(3), and 100.70(b).

38.

Defendants are therefore liable to Plaintiffs pursuant to C.F.R. § 100.7, and Plaintiffs are "aggrieved persons" entitled to relief under the Fair Housing Act.

### SECOND CLAIM

**Civil Rights Act of 1866**

**(42 U.S.C. § 1981)**

39.

Plaintiffs reallege and incorporate by reference all previous paragraphs on this complaint.

40.

Defendants injured Plaintiffs by impairing their right in the making, performance, modification, and termination of contracts, including the enjoyment of all benefits, privileges, terms, and conditions, and benefit of all laws and proceedings for the security of persons and property a is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

## THIRD CLAIM

### Civil Rights Act of 1866

### (42 U.S.C. § 1982)

41.

Plaintiffs reallege and incorporate by reference all previous paragraphs on this complaint.

42.

Defendants injured Plaintiffs by impairing their right, as enjoyed by white citizens, to inherit, purchase, lease, sell, hold, and covey real and personal property, in violation of 42 U.S.C. § 1982.

## FOURTH CLAIM

### Intentional Infliction of Emotional Distress

### (La. C.C. Art. 2315)

43.

Defendants intentionally engaged in extreme and outrageous conduct that it knew, or should have known, would cause severe emotional distress. As a result of Defendants' actions and inactions, Plaintiffs suffered from severe emotional distress.

44.

As a result of Defendants' actions and inactions, Plaintiffs suffered from anxiety, fear, humiliation, and degradation.

## FIFTH CLAIM

### Negligence

### (La. C.C. Art. 2316)

45.

Defendant The Moorings, injured Plaintiffs by negligence for failure to train, monitor, and/or supervise its agents. The Moorings as also negligence in failure to ensure that its agents comply with the Fair Housing Act.

**WHEREFORE**, bases on the foregoing, Plaintiffs pray for the following relief:

1. Permanently enjoin all unlawful practices alleged in this complaint and impose injunctive relief prohibiting defendants and their agents from violating the unlawful practices alleged herein;

2. Enter a permanent injunction directing Defendants and their agents to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein, and to prevent similar occurrences in the future;

3. The Court declare that Defendants have violated the provisions of the Fair Housing Act and are therefore liable under the same;

4. The Court declare that Defendants have violated Louisiana State law and are therefore liable under the same;

5. The Court grant reasonable attorneys fees and the cost of this lawsuit to plaintiffs; and

6. The Court grant all such other relief as the court deems just.

Dated January 30, 2024

**Respectfully Submitted**,

*[signature]*

Artis G. Ulmer, III (LSBA #36290)
artisgu@gmail.com
26906 Autumn Timbers Lane
Cypress, TX 77433
(504) 782-9759