IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHALMON J. STENNIS and | § | |
| DR. LAUREN STENNIS, DDS | § | CIVIL ACTION NO. 2:24-cv-00269 |
| | § | |
| *Plaintiffs*, | § | |
| | § | DISTRICT JUDGE MORGAN |
| v. | § | |
| | § | |
| THE MOORINGS OF OAK HARBOR | § | MAGISTRATE JUDGE CURRAULT |
| PROPERTY OWNERS' ASSOCIATION, | § | |
| INC., COMMUNITY MANAGEMENT, LLC, | § | |
| MICHAEL FELGER, and KELLY | § | |
| CAMPBELL | | |
| | | |
| *Defendants*. | | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.

Plaintiffs, Shalmon J. Stennis and Dr. Lauren Stennis, DDS, ("Plaintiffs") residents of St. Tammany Parish, Louisiana, hereby amend the original Complaint and bring this action against Defendants, The Moorings of Oak Harbor Property Owners' Association, Inc., Community Management, LLC, Michael Felger, and Kelly Campbell for injunctive, declaratory, and monetary relief for discrimination on the basis of race and in violation of the Fair Housing Act, the Civil Rights Act of 1866, and related, supplemental state law claims. Defendants have assessed a total of $22,200.00 in discriminatory fines against Plaintiffs in just under one year.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

This Court also has supplemental jurisdiction to consider Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

4.

Venue is proper under 28 U.S.C. § 1391 because the events alleged in this complaint occurred in St. Tammany Parish, Louisiana.

## PARTIES

5.

Plaintiffs are African-American residents of Slidell, St. Tammany Parish, Louisiana, residing at Slidell, Louisiana.

6.

Defendant, The Moorings of Oak Harbor Property Owners' Association, Inc. ("The Moorings") is a domestic corporation with its principal address in St. Tammany Parish, Louisiana. The Moorings is a homeowner's association ("HOA") and governs the Plaintiffs' residential community. The Moorings, as an HOA, is subject to the Fair Housing Act, 42 U.S.C. § 3601 et seq.

7.

Defendant, Community Management, LLC ("Community"), is a domestic property management firm with its principal address in Livingston Parish, Louisiana.  Community acts as the property manager for The Moorings, in Slidell, Louisiana, and has done so at all times relevant in this Action.

8.

Defendant, Michael Felger ("Felger"), is a white resident of St. Tammany Parish, Louisiana. Felger is the president of The Moorings and resides at 149 Islander Drive in Slidell, Louisiana.

9.

Defendant, Kelly Campbell ("Campbell"), is a white resident of St. Tammany Parish, Louisiana. Campbell is the treasurer of The Moorings and resides at 205 Solomon Drive in Slidell, Louisiana.

## FACTS AND CAUSES OF ACTION

### FIRST CLAIM

### Fair Housing Act

### (42 U.S.C. § 3601 et seq.)

10.

Section 3604 makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

11.

On November 2, 2021, Plaintiffs began construction on their family home located in The Moorings of Oak Harbor. After completion of construction, Plaintiffs moved into their new home by February 2023. Before being approved by The Moorings to build in the community, Plaintiffs had to submit the blueprints/floor plans for their home. The plans included a backyard pool design. The design of said pool revealed that its placement would conceal the exposed foundation located in the rear of the house. The Moorings approved the blueprints/floor plans and allowed Plaintiffs to build their home. After receiving the HOA's approval, Plaintiffs closed on the mortgage, which included consenting to be governed by the HOA.

12.

Following construction, Plaintiffs moved into their new home. However, because of manpower issues and material shortages following the global pandemic, construction of the pool did not begin until after Plaintiffs moved into their home. Thus, the rear foundation, which was scheduled to be covered by the pool as outlined in the floor plans, was still exposed. Nonetheless, at the direction of Defendant Felger, The Moorings and Community began to issue citations to Plaintiffs for the same. As such, this shows that Felger and The Moorings discriminated against Plaintiffs in relation to the initial sale of their home because the approved floor plans indicated that the rear foundation would be concealed by a pool, and Felger and The Moorings were aware that the pool was pending construction. Plaintiffs believe they were being discriminated against because of their race due to several other instances of harassment and discrimination by Felger, Campbell, The Moorings, and Community.

13.

Consequently, Felger, The Moorings, and Community discriminated against Plaintiffs in the terms, conditions, or privileges of the sale of their home, based on race, by issuing citations for the exposed rear foundation, in violation of 42 U.S.C. § 3604. A current owner may have a claim for discrimination relating to the initial sale of a house. *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 742 (5th Cir. 2005); *Hood v. Pope*, 627 Fed.Appx. 295, 299 (5th Cir. 2015).

14.

Felger, The Moorings, and Community failed to issue citations for the same violation committed by white neighbors, as there are several homes owned by white residents with exposed foundations.

15.

The HOA governing documents that Plaintiffs agreed to during closing included provisions for entering the community. Specifically, The Moorings agreed to provide Plaintiffs with a decal that would allow entry into the community. However, without legal basis or authority, on August 24, 2023 and on October 29, 2023, Felger instructed an employee of The Moorings or Community to deactivate Plaintiffs' decal, thereby limiting their ability to not only enter the community, but to also get to their home. Plaintiffs believe that this deactivation was discrimination because of their race due to several other instances of harassment and discrimination by Felger, Campbell, The Moorings, and Community. Consequently, Felger, The Moorings, and Community discriminated against Plaintiffs in the provision of services or facilities in connection with the initial sale of their home based on race, in violation of 42 U.S.C. § 3604. Defendants have not deactivated the decals of white residents that committed violations of the community restrictions.

16.

After Plaintiffs closed on their home, Felger, Campbell, The Moorings, and Community conspired to harass and discriminate against Plaintiffs because of their race. Felger, Campbell, and The Moorings did not know the identity of Plaintiffs until after closing. In fact, Felger and Campbell assumed Plaintiff was the contractor simply because he was African-American and drove a black pick-up truck.  The discrimination against Plaintiffs relates to the initial sale of their home because Defendants are interfering with the completion of what was approved prior to closing in order to unfairly justify the issuance of fines, a possible lien, and the resultant foreclosure needed to enforce said lien. The discrimination amounts to interference because Plaintiffs would have to spend money to temporarily conceal things that would eventually be out of sight once the approved pool construction is complete.

17.

During construction of the home, The Moorings' treasurer, Defendant Campbell, in furtherance of the conspiracy, initiated the pattern and practice of racial harassment and discrimination against Plaintiffs by weaponizing the Sherrif's Office.  On May 7, 2022, Campbell called 911 on Plaintiff Shalmon Stennis to report that Plaintiff's contractors were double-parked on the street.  The actions of Defendant Campbell, in concert with the conspiracy and the §3604 acts of discrimination by Felger, The Moorings, and Community amount to racial discrimination and harassment of Plaintiffs in violation of 42 U.S.C. §3617, as Campbell intimidated and interfered with Plaintiffs' exercise and enjoyment of the housing rights granted to them by §3604.

18.

It became evident that there was a coordinated effort to harass and deter Plaintiffs from moving into The Moorings of Oak Harbor because Plaintiffs continued to be harassed by several white neighbors prior to moving into the community.

19.

On March 27, 2022, neighbor Daryl Bottenhagen called the police on Plaintiff Shalmon Stennis after Plaintiff asked Bottenhagen to stop using the construction dumpster located on Plaintiff's property. Bottenhagen became hostile with Plaintiff, causing Plaintiff to strike Bottenhagen in self-defense. No charges were filed against Plaintiff.

20.

Because of the continual weaponization of the Sheriff's office, Plaintiffs began to collect copies of each 911 call, along with the bodycam footage, dispatch notes, and police reports related to every call for service that was made by a neighbor against Plaintiffs. Plaintiffs were neither arrested nor cited after each call.

21.

On August 15, 2022, two unknown, white neighbors broke into Plaintiffs' home while it was still under construction.

22.

After moving into the community, Plaintiffs began to receive numerous, frivolous, citations from Defendant Community, acting on behalf of The Moorings, for allegedly violating community restrictions. First, Plaintiffs were cited for having unused pilings left on the premises. However, as evidenced by the original building plans that were approved by The Moorings, Plaintiffs' pool was pending construction, and said pilings were to be used for such purpose.

23.

Plaintiffs advised The Moorings and Community of these plans. However, The Moorings and Community continued to levy Plaintiffs with fines related to the unused pilings. Specifically, Denise Scipione, an employee of Defendant Community, advised that she was acting pursuant to Defendant Felger's requests. Also, when Plaintiffs presented Ms. Scipione with information to dispute the alleged violations, she advised that decisions would have to be approved by Defendant Felger. As of this date, the fines are still in due and owing.

24.

As such, the actions of The Moorings, Community, and Felger amounted to racial discrimination against Plaintiffs in violation of 42 U.S.C. § 3604, in that Defendants' actions was discrimination in the terms, conditions, or privileges related to the initial sale of Plaintiffs' home based on race.

25.

In addition to the §3604 violation, The Moorings, Community, and Felger interfered with Plaintiffs' exercise and enjoyment of the housing rights granted to them by §3604, by continually harassing and threating Plaintiffs with fines and potential liens for failure to pay said fines, in violation of §3617.

26.

Second, Plaintiffs received multiple fines for having a visible slab. The Moorings and Community advised Plaintiffs that the slab needed to be painted and enclosed with fill in/landscaping. Again, The Moorings and Community were advised that the slab was visible because of the pending pool construction and, as outlined in the approved building plans, said pool would conceal the slab once constructed. However, The Moorings and Community continued to

levy Plaintiffs with fines related to the exposed slab. Specifically, Denise Scipione, an employee of Defendant Community, advised that she was acting pursuant to Defendant Felger's requests. When Plaintiffs presented Ms. Scipione with information to dispute the alleged violations, she advised that decisions would have to be approved by Defendant Felger. As of this date, the fines are still in due and owing.

27.

Nonetheless, there is photographic evidence of visible slabs on numerous homes in the community that belong to white families. No citations were issued to these white neighbors.

28.

As such, the actions of The Moorings, Community, and Felger amounted to racial discrimination against Plaintiffs in violation of 42 U.S.C. § 3604, in that Defendants' actions was discrimination in the terms, conditions, or privileges related to the initial sale of Plaintiffs' home based on race.

29.

In addition to the §3604 violation, The Moorings, Community, and Felger interfered with Plaintiffs' exercise and enjoyment of the housing rights granted to them by §3604, by continually harassing and threating Plaintiffs with fines and potential liens for failure to pay said fines, in violation of §3617.

30.

Third, Plaintiffs were cited for not having the proper screening around Plaintiffs' garbage can. However, this area is likewise part of the pool construction, and would be remedied after completion of the same. Plaintiffs advised The Moorings and Community of these plans. However, The Moorings and Community continued to levy Plaintiffs fines related to the screening.

Specifically, Denise Scipione, an employee of Defendant Community, advised that she was acting pursuant to Defendant Felger's requests. When Plaintiffs presented Ms. Scipione with information to dispute the alleged violations, she advised that decisions would have to be approved by Defendant Felger.  As of this date, the fines are still in due and owing.

31.

Nonetheless, there is photographic evidence of visible garbage cans at numerous homes in the community that belong to white families. No citations were issued to these white neighbors. In fact, the photograph attached to the violation notice given to Plaintiffs was heavily cropped in order to exclude the garbage can that was visible at the home of Plaintiffs' white neighbor.

32.

As such, the actions of The Moorings, Community, and Felger amounted to racial discrimination against Plaintiffs in violation of 42 U.S.C. § 3604, in that Defendants' actions was discrimination in the terms, conditions, or privileges related to the initial sale of Plaintiffs' home based on race.

33.

In addition to the §3604 violation, The Moorings, Community, and Felger interfered with Plaintiffs' exercise and enjoyment of the housing rights granted to them by §3604, by continually harassing and threating Plaintiffs with fines and potential liens for failure to pay said fines, in violation of §3617.

34.

While trying to address the aforementioned issues, Plaintiffs were met with finger pointing by The Moorings to Community, and Community back to The Moorings, without providing any sort of answers or assistance, leaving Plaintiffs feeling as though they are being targeted based on race.

35.

Defendant Felger took a personal interest in harassing and discriminating against Plaintiffs because all HOA decisions require approval from the board as a whole. Furthermore, Felger also acted as a property manager despite Community being hired to do such work. In other words, Felger acted with both legislative and executive powers. Stated a different way, Defendant Felger acted as the officer, judge, jury, and executioner.

36.

On January 25, 2024, Defendants continued to harass Plaintiffs by sending a "final warning" advising of a total balance of $22,200.00 (twenty-two thousand two hundred dollars) owed to The Moorings. The demand was sent by Community on behalf of The Moorings.  This total amount has been assessed in just under one year.

37.

On numerous occasions, Plaintiff Shalmon Stennis was referred to as "n__ger" by several neighbors. On a different occasion, a white neighbor, Michael Deltoro, told Plaintiff Shalmon Stennis "I don't want your boys talking to my girls." However, at the time, the neighbor's daughters were 13, 16, and 19 years old. Whereas Plaintiffs' sons were only 6 and 7 years old.

38.

Thus, Mr. Deltoro implied that Plaintiffs' sons were sexual predators because of their race, despite them being little boys that haven't yet reached puberty. Meanwhile, two of Mr. Deltoro's daughters were teenagers and one was a grown woman.

39.

As a result of the aforementioned acts of discrimination and harassment, Plaintiffs have suffered from mental anguish and emotional distress.

40.

The Moorings is directly and vicariously liable for the foregoing discriminatory housing practices committed by its employees and/or agents pursuant to 24 C.F.R. § 100.7. Likewise, Community is directly and vicariously liable for the foregoing discriminatory housing practices committed by its employees and/or agents pursuant to 24 C.F.R. § 100.7. Additionally, Felger is directly liable for the foregoing discriminatory housing practices pursuant to 24 C.F.R. § 100.7. Campbell is also directly liable for the foregoing discriminatory housing practices pursuant to 24 C.F.R. § 100.7. Plaintiffs are "aggrieved persons" entitled to relief under the Fair Housing Act.

## SECOND CLAIM

**Civil Rights Act of 1866**

**(42 U.S.C. § 1981 and 42 U.S.C. § 1982)**

41.

Pursuant to Section 1981 of the Civil Rights Act of 1866, all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. § 1981(b).

42.

Pursuant to Section 1982 of the Civil Rights Act of 1866, all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

43.

Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

44.

When Plaintiffs purchased their home in The Moorings of Oak Harbor, they agreed to be governed by community restrictions and covenants. In other words, Plaintiffs executed a contract with The Moorings. However, The Moorings, Community, Felger, and Campbell deprived Plaintiffs of the equal rights and benefits afforded to them under the community restrictions and covenants because Plaintiffs were not subject to like punishment and penalties as their white neighbors who committed the same violations, in violation of §§1981 and 1982. The actions of each Defendant prevented Plaintiffs from enjoying all of the benefits and privileges of their contractual relationship with The Moorings.

45.

Each of the Defendants discriminatorily enforced alleged violations of the restrictions and covenants solely against Plaintiffs and other African-American property owners in the community.

Defendant Felger instructed employees of Community to issue citations to Plaintiffs while ignoring the same type of violations committed by white neighbors. Also, Defendant Felger, without authority, instructed employees of The Moorings and/or Community to deactivate Plaintiffs' decals and remotes in order to deprive Plaintiffs access to the community.

46.

Defendant Felger did not provide instructions to deactivate the decals and remotes of white neighbors that violated the community restrictions. In one instance where Community issued a citation to Plaintiffs, it included a cropped photo of the violations allegedly committed by Plaintiffs in order to remove evidence of the same violation committed at a white neighbors' house, i.e., a visible water hose and garbage can. Thus, this shows that Felger, The Moorings, and Community deprived Plaintiffs of the equal rights and benefits afforded under the community restrictions and covenants because Plaintiffs were not subject to like punishment and penalties as their white neighbors who committed the same violations.

47.

Numerous violations of the same restrictions at the homes of white property owners, including two board members (Campbell and Snipes), went unenforced.  As such, this shows that Felger, The Moorings, and Community possessed an intent to discriminate on the basis of race.

48.

At the behest of Felger, Community cited Plaintiffs for having a visible water hose. However, there is photographic evidence of a visible water hose at the home of Defendant Campbell, HOA board member, Jimmy Snipes, and at several other homes in the community that belong to white families. Thus, Plaintiffs were prevented from enjoying all of the benefits and privileges of their contractual relationship with The Moorings because Plaintiffs were not subject

to like punishment and penalties as their white neighbors who committed the same violations, in violation of §§1981 and 1982.

49.

Defendants have done all of this knowingly with the intention of humiliating Plaintiffs due to their race and ethnicity, and with conscious indifference of the effects their acts have done against the Plaintiffs.

50.

Thus, Plaintiffs affirmatively plead that: 1) they are members of a racial or ethnic minority or protected class, in this case, they are of African-American decent; 2) that Defendants have had, directly or indirectly, expressly and discreetly, the intention to discriminate against Plaintiffs on the basis of race; and 3) that the discrimination concerned one or more activities enumerated in the statute, i.e., equal enjoyment of all benefits and privileges of the contractual relationship with The Moorings, in violation of §1981. Plaintiffs also plead that but for Plaintiffs' race, they would not have been discriminated against by Defendants and would not have suffered damages.

51.

Plaintiffs further plead that Defendants' conduct amounts to interference with the rights and benefits connected with the ownership of property in violation of §1982, i.e., to use and hold property as enjoyed by white citizens.

52.

Felger, The Moorings, and Community are connivingly using purported violations of HOA rules and restrictions as mere pretext to disguise their discriminatory and racial animus against Plaintiffs, and to achieve their ultimate purpose, which is force them out of The Moorings of Oak Harbor or cause them severe damages, or both.

## THIRD CLAIM

### Conspiracy to Discriminate

### (42 U.S.C. § 1985)

53.

Plaintiffs reallege and incorporate by reference all previous paragraphs on this complaint.

54.

Section 1985(3) of the Civil Rights Act prohibits the act of conspiracy to interfere with civil rights of a person. Said section provides that: "If two or more persons in any State [...] conspire [...] for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws […] the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

55.

The Moorings, Community, Felger, and Campbell conspired to discriminate against the Plaintiffs in violation of §1985(3). The facts stated in this Complaint clearly show that Defendants are causing damage to Plaintiffs due to their conspiracy to discriminate.

56.

Defendants agreed to enforce alleged violations of community restrictions only against Plaintiffs based on their race for the sole purpose of depriving housing rights and civil rights to Plaintiffs and for the purpose of depriving Plaintiffs the equal rights and benefits afforded under the community restrictions and covenants. Defendants refused to enforce similar violations committed by white neighbors.

57.

In furtherance of said agreement, Defendant Felger instructed employees of Community to issue citations to Plaintiffs while ignoring the same type of violations committed by white neighbors. In furtherance of said agreement, Defendant Felger, without authority, instructed employees of the of The Moorings and/or Community to deactivate Plaintiffs' decals and remotes in order to deprive Plaintiffs access to the community. Defendant Felger did not provide instructions to deactivate the decals and remotes of white neighbors that violated the community restrictions. In furtherance of said agreement, citations given to Plaintiffs included cropped photos of the violations allegedly committed by Plaintiffs in order to remove evidence of the same violation committed at a white neighbors' house.

58.

In furtherance of said agreement, HOA board members, of which includes Felger and Campbell, voted, or proposed, to increase the minimum fine associated with violations of community restrictions in order to bankrupt black homeowners, file liens on their properties, and to force a foreclosure in order to enforce said liens. Despite increasing the minimum fine, violations committed by white homeowners went ignored.

59.

In furtherance of said agreement, Felger, Campbell, The Moorings, and Community issued citations to Plaintiffs for having a visible slab despite having knowledge that said slab would soon be covered after construction of a pool that was outlined in the approved floor plans. In furtherance of said agreement, Defendant Campbell called the police on Plaintiff in order to harass and discriminate against Plaintiff. In furtherance of said agreement, Felger, Campbell, and The Moorings conspired with unknown neighbors to use Wi-Fi jammers in order to disable Plaintiffs

surveillance cameras, as the unlawful entry identified in ¶ 21 mysteriously disappeared from footage. There was a large gap in footage missing that coincided with the approximate time that Plaintiffs' home was burgled.

60.

By acting in conspiracy, Defendants have caused Plaintiffs to suffer from mental anguish and emotional distress. By acting in conspiracy, Defendants have deprived Plaintiff's the equal rights and benefits afforded under the community restrictions and covenant, as well their civil rights, namely the rights enumerated under §§1981 and 1982 as stated herein.

61.

As further evidence of Defendants' conspiracy, The Moorings and Community voided some of the late fees that were unfairly assessed just a few hours after the original complaint was filed. This shows that Defendants conspired to conceal their harassment and discrimination of Plaintiffs. This also shows and further proves the existence of a concerted effort between Defendants to harass and discriminate against Plaintiffs on account of race.

## **FOURTH CLAIM**

### **Intentional Infliction of Emotional Distress**

### **(La. C.C. Art. 2315)**

62.

Defendants intentionally engaged in extreme and outrageous conduct by 1) conspiring to deprive Plaintiffs of their equal rights and benefits under the community restrictions and covenants, 2) weaponizing the Sheriff's office by calling 911 on Plaintiff because Plaintiff's contractors were double parked, 3) refusing to enforce violations by white homeowners, and 4) revoking or limiting access to the community without authority to do so. Defendants' conduct was

extreme and outrageous because the same would not pass the boundaries of decency and would be utterly intolerable to civilized society.

63

The distress suffered by Plaintiffs due to the conduct of Defendants was severe because it caused anxiety and fear so debilitating that Plaintiffs could not sleep due to fear that Defendants would come in the middle of the night to burn down their home and/or cause harm to them and their minor children. In addition, the distress was severe because the mere thought of losing their dream home due to discrimination and harassment by Defendants caused Plaintiffs to endure nightmares. Also, Plaintiff Shalmon Stennis suffered from severe distress because he did not want to be the victim of Defendant Campbell's weaponization of the police. Plaintiffs also suffered from severe emotional distress while trying to get home to tend to an ill child. However, because Plaintiffs' access to the community was restricted, Plaintiffs could not easily enter the subdivision, causing Plaintiffs to agonize, at the entrance gate, over the well-being of their child.

64.

Defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct because Defendants conspired amongst themselves and with other neighbors in the community unnamed in this suit to harass and discriminate against Plaintiffs. Defendants knew that a homeowner would deeply fear losing their home due to unfairly assessed liens. Defendants knew that preventing a homeowner from accessing his home would cause debilitating anxiety.

65.

Defendant Campbell desired to inflict severe emotional distress on Plaintiff Shalmon Stennis when he called the police on Plaintiff (for something that Plaintiff himself did not do) because Campbell was aware that black males are disproportionately treated with indifference by law enforcement. Campbell also knew that the complaints of a white male about the conduct of a black male would incite racial hatred and cause brutality by the police.

## FIFTH CLAIM

### Negligence

### (La. C.C. Art. 2316)

66.

The Moorings owed a duty to Plaintiffs to ensure that Plaintiffs' housing and civil rights were not violated by agents of The Moorings. The Moorings breached said duty by failing to train, monitor, and/or supervise Defendant Campbell, Defendant Felger, Defendant Community, and other agents working on behalf of The Moorings. Specifically, The Moorings failed to ensure that Campbell, Felger, Community, and other agents complied with the Fair Housing and Civil Rights Acts by allowing a conspiracy against Plaintiffs to take shape. The Moorings failed to ensure that Campbell, Felger, Community, and other agents enforced the community restrictions and covenants against all residents regardless of race or national origin. The Moorings failed to ensure that Campbell, Felger, Community, and other agents did not deprive Plaintiffs of the equal rights and benefits afforded to them under the community restrictions and covenants.

67.

As a result of said breach, Plaintiffs were subjected to emotional distress and other injuries. The breach of said duty was the cause in fact of Plaintiffs' injuries because but for Defendants' conduct, Plaintiffs would not have been injured. Said breach was the legal cause of Plaintiffs' injuries because the injuries sustained by Plaintiffs are easily associated with the type of conduct engaged in by Defendants. Consequently, The Moorings is liable for negligence.

68.

Defendant Community is also liable for negligence because it also failed to ensure that its employees and agents did not violate the housing and civil rights afforded to Plaintiffs. Community owed a duty to Plaintiffs to ensure that Plaintiffs' housing and civil rights were not violated by Community Employees. Community breached said duty by failing to train, monitor, and/or supervise its employees that acted as community managers for The Moorings of Oak Harbor. Specifically, Community failed to ensure that its employees complied with the Fair Housing and Civil Rights Acts by allowing Community to become part of a conspiracy against Plaintiffs. Community failed to ensure that its employees enforced the community restrictions and covenants against all residents regardless of race or national origin. Community failed to ensure that its employees did not deprive Plaintiffs of the equal rights and benefits afforded to them under the community restrictions and covenants.

69.

As a result of Community's breach of duty, Plaintiffs were subjected to emotional distress and other injuries. The breach of said duty was the cause in fact of Plaintiffs' injuries because but for Community's actions and/or inactions, Plaintiffs would not have been injured.

70.

Said breach was the legal cause of Plaintiffs' injuries because the injuries sustained by Plaintiffs are easily associated with the type of actions and/or inactions by Community.

71.

**(Continued Violations Doctrine)**

Each of the preceding acts were part of an organized scheme leading up to and including the January 25, 2024 demand for payment. On a continuing basis, starting with the actions of Defendant Campbell on May 7, 2022, Defendants have engaged in the foregoing related acts that prevented Plaintiffs from enjoying the rights afforded to them under § 3604, § 3617, § 1981, § 1982, and the related state law claims. Defendants not only conspired amongst themselves, but also enlisted the help of other neighbors not named in this suit. Thus, the continued violations doctrine applies, and each of Plaintiffs' claims have been raised timely. Nonetheless, at their annual meeting on October 17, 2023, The Moorings board of directors, on which Felger and Campbell sit as officers, included on the agenda addressing the problem of loud and vulgar music being played by certain residents.  However, the agenda did not address any of the violations committed by the white residents addressed herein.  This shows how The Moorings, Felger, and Campbell refuse to issue equal punishment to all residents regardless of race. Additionally, the January 25, 2024 demand was sent by Community on behalf of The Moorings. Consequently, each defendant named herein committed some act or omission in furtherance of a conspiracy to discriminate within the one year of the date the original complaint was filed.

72.

For the past two years, Defendants and other white neighbors subjected Plaintiffs to severe and pervasive harassment, threats, discrimination and intimidation because of race.

73.

Defendants and other neighbors created a hostile environment that unreasonably interfered with Plaintiffs' right to use and enjoy their home.

74.

The Moorings and Community failed to take prompt action to correct or end their own discriminatory conduct, as well as the conduct of Felger, Campbell, and other employees or agents. Defendants were aware that Plaintiffs were being subjected to extensive and unwelcome harassment based on race because it was orchestrated and coordinated by Defendants.

75.

As a result of the Defendants' actions and inactions, Plaintiffs suffered a violation of their fair housing rights, civil rights, loss of the use and enjoyment of their property, and emotional distress, including anxiety, fear, humiliation, and degradation.

76.

Accordingly, Plaintiffs are entitled to compensatory damages in excess of $250,000.00.

77.

**WHEREFORE**, bases on the foregoing, Plaintiffs pray for the following relief:

1. Permanently enjoin all unlawful practices alleged in this complaint and impose injunctive relief prohibiting defendants and their agents from violating the unlawful practices alleged herein;

2. Direct Defendants and their agents to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein, and to prevent similar occurrences in the future;

3. Declare that Defendants have violated the provisions of the Fair Housing Act and Civil Rights Act and are therefore liable under the same;

4. Declare that Defendants have violated Louisiana State law and are therefore liable under the same;

5. Find that Defendants are liable for general and special damages.

6. Grant reasonable attorneys fees and the cost of this lawsuit to plaintiffs; and

7. Grant all such other relief as the court deems just.

Dated March 23, 2024

**Respectfully Submitted**,


_/s/ Artis G. Ulmer, III____
Artis G. Ulmer, III (LSBA #36290)
artisgu@gmail.com
26906 Autumn Timbers Lane
Cypress, TX 77433
(504) 782-9759

ATTORNEY FOR PLAINTIFFS


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system on the 23rd day of March 2024. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

_/s/ Artis G. Ulmer, III____
Artis G. Ulmer, III