UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHALMON J. STENNIS ET. AL, **Plaintiffs** | CIVIL ACTION |
| VERSUS | NO.  24-269 |
| THE MOORINGS OF OAK HARBOR PROPERTY OWNERS' ASSOCIATION INC., ET AL., **Defendants** | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court are Defendants, The Moorings of Oak Harbor Property Owner's Association, Inc. ("The Moorings"), Community Management, LLC ("Community Management"), and Michael Felger ("Felger") (sometimes referred to collectively as "the Defendants"). The Defendants filed a joint motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The motion is opposed.[2] Defendants filed a reply.[3]

## BACKGROUND

On January 30, 2024, Plaintiffs Lauren and Shalmon Stennis ("Plaintiffs") filed suit against four defendants: the Moorings, the homeowners association; Community Management, the property management firm; Michael Felger, homeowners association president; and Kelly Campbell, alleged to be the homeowners association treasurer,[4] alleging they discriminated against Plaintiffs on the basis of their race in violation of the

---

[1] R. Doc. 26.
[2] R. Doc. 29.
[3] R. Doc. 31.
[4] In Plaintiffs' complaint, they allege Kelly Campbell serves as board treasurer of The Moorings. R. Doc. 18, p. 6. Campbell filed a separate Motion to Dismiss under Rule 12(b)(6), asserting he is not the treasurer and was improperly named in the suit. R. Doc. 38.

Fair Housing Act ("FHA")[5] and the Civil Rights Act ("CRA").[6] Plaintiffs also assert state law negligence and intentional infliction of emotional distress ("IIED") claims.[7]

Defendants filed their first motion to dismiss on March 19, 2024.[8] This Court granted Plaintiffs leave to file an amended complaint.[9] Plaintiffs filed their amended complaint on March 23, 2024,[10] and the Court denied the Defendants' first motion to dismiss without prejudice.[11] Defendants then filed this joint motion to dismiss.[12]

According to their amended complaint, Plaintiffs identified a lot they wished to purchase in the Moorings of Oak Harbor, a subdivision in Slidell, Louisiana.[13] Plaintiffs allege that The Moorings approved Plaintiffs' proposed building plans, which included plans for an outdoor pool.[14] Only then, Plaintiffs allege, did they close on the lot and begin construction on November 2, 2021.[15]

Plaintiffs allege that Defendants did not know Plaintiffs' identities and race until after approving Plaintiffs' construction plans.[16] Once construction began, and the Defendants learned of Plaintiffs' race, Plaintiffs allege that Defendants "initiated [a] pattern and practice of racial harassment and discrimination against Plaintiffs" whereby Defendants "conspired to harass and discriminate against Plaintiffs because of their race."[17] Plaintiffs allege that, on March 27, 2022, one of Plaintiffs' neighbors, who is not

---

[5] 42 U.S.C. § 3601 et seq.
[6] 42 U.S.C. §§ 1981-1982; R. Doc. 18, p. 1.
[7] R. Doc. 18, pp. 18-23.
[8] R. Doc. 13. Like the instant motion, only The Moorings, Community Management, and Felger joined in the first motion to dismiss.
[9] R. Doc. 16.
[10] R. Doc. 18.
[11] R. Doc. 21.
[12] R. Doc. 26.
[13] R. Doc. 18 at p. 4.
[14] *Id.*
[15] *Id.*
[16] *Id.* at p. 6.
[17] *Id.*

identified and who is not alleged to be a homeowners association officer, called the police after Shalmon Stennis asked the neighbor to stop using the construction dumpster on Plaintiffs' property.[18] Plaintiffs also allege that on May 7, 2022, during construction, Campbell called 911 to report that Plaintiffs' contractors were double-parked on the street.[19] Plaintiffs further allege that on August 15, 2022, two unidentified White neighbors broke into Plaintiffs' home while it was under construction.[20] Plaintiffs assert these incidents demonstrate a "coordinated effort to harass and deter Plaintiffs from moving into the Moorings of Oak Harbor."[21]

After construction was completed, Plaintiffs moved into their home in February 2023.[22] Plaintiffs allege that, due to materials shortages, construction of their pool did not begin until after Plaintiffs moved into their home.[23] Plaintiffs allege Defendants began to issue citations against Plaintiffs for allegedly violating The Moorings community restrictions, such as leaving unused pilings on the property, having a visible slab due to the unfinished pool construction, failing to properly screen-in the garbage can, and having a visible water hose,[24]  while failing to enforce the same violations against White residents.[25] Plaintiffs allege Felger, in his capacity as board president of The Moorings, instructed Community Management employees to impose fines on Plaintiffs.[26] Plaintiffs allege that The Moorings board members, including Felger and Campbell, voted to

---

[18] *Id.* at p. 7.
[19] *Id.* at p. 6.
[20] *Id.* Plaintiffs allege the security footage of this incident has been erased. *Id.* at p. 18.
[21] *Id.*
[22] *Id.* at p. 4.
[23] *Id.*
[24] *Id.* at pp. 7-10. Plaintiffs assert several White neighbors have visible garbage cans and exposed hoses, but Defendants issued no citations to these neighbors. *Id.* at p. 10, 14. Plaintiffs also allege that several other homes of White families in the community have visible slabs, but they have not been fined. *Id.* at p. 9.
[25] *Id.* at p. 7. Plaintiffs assert in their amended complaint that several community restriction violations at White residents' homes went unenforced.
[26] *Id.* at pp. 9-11, 14.

increase the minimum fine amounts for the fines issued against Plaintiffs.[27] Plaintiffs allege that Community Management, "on behalf of the Moorings," issued Plaintiffs a "final warning" on January 25, 2024, listing fines owed to the Moorings for violations totaling over $22,200.[28]

Plaintiffs also allege that on both August 24, 2023, and October 29, 2023, Community Management employees, at Felger's instruction,[29] deactivated Plaintiffs' entry decal, a device that provided Plaintiffs with access into the gated community.[30] Plaintiffs allege Defendants did not deactivate the decals of White residents who committed violations.[31] Plaintiffs allege that deactivation of their entry decal caused them severe emotional distress because, on one occasion, they were prevented from entering the community to care for their sick child.[32] Plaintiffs also allege that Felger, Campbell, and The Moorings conspired with other residents to use Wi-Fi jammers to disable Plaintiffs' surveillance cameras that would otherwise have captured a burglary of Plaintiffs' home allegedly committed by White neighbors.[33]

Defendants filed the instant motion to dismiss under Rule 12(b)(6), arguing that Plaintiffs fail to state a claim upon which relief may be granted and that the amended complaint "concerns allegations that occurred more than one year prior to the filing of this suit" such that the claims are prescribed.[34] Defendants argue Plaintiffs fail to allege facts sufficient  to support their claims because Plaintiffs agreed to the restrictions

---

[27] *Id.* at p. 17.
[28] *Id.* at p. 11. Plaintiffs further allege the Defendants charged Plaintiffs with late fees, then voided some of these fees "hours after the original complaint was filed." Plaintiffs argue this shows "that Defendants conspired to conceal their harassment and discrimination of Plaintiffs." *Id.* at p. 18.
[29] *Id.* at p. 14.
[30] *Id.* at p. 5.
[31] *Id.*
[32] *Id.* at p. 19.
[33] *Id.* at pp. 17-18.
[34] R. Doc. 26-1, p. 1.

imposed by The Moorings when they purchased their property.[35] Defendants argue that, because Plaintiffs violated the restrictions, they were fined appropriately, and their "grievances . . . do not rise to the level of justiciable causes of action."[36]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[37] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[40] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[41]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[42] However, "legal conclusions can provide the framework

---

[35] *Id.* at p. 2.

[36] *Id.*

[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[39] *Id.*

[40] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[41] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[42] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

of a complaint, [if] they [are] supported by factual allegations."[43] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[44] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[45] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[46] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . ."[47]

A Rule 12(b)(6) motion to dismiss is the proper procedural mechanism to raise a statute of limitations defense.[48] A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint."[49] When a "plaintiff's claims are prescribed on the face of the petition, plaintiff has the burden of proving the claims are not prescribed."[50] In summary, "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[51]

## LAW AND ANALYSIS

Defendants seek dismissal of Plaintiffs' claims,[52] arguing that Plaintiffs "fail to

---

[43] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[44] *Iqbal*, 556 U.S. at 679.

[45] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).

[46] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).

[47] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).

[48] *Bowers v. Nicholson*, 271 F. App'x 446, 449 (5th Cir. 2008).

[49] *Cranner v. Coletti*, No. CIV.A. 13-6681, 2014 WL 1407328, at *2 (E.D. La. Apr. 10, 2014).

[50] *Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co.*, No. CV 17-0200, 2018 WL 2209165, at *4 (W.D. La. May 11, 2018*), aff'd sub nom., Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 F. App'x 289 (5th Cir. 2019).

[51] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[52] Defendants do not address Plaintiffs' § 3617 harassment claim under the Fair Housing Act.

meet the burden of establishing claims under the Fair Housing Act and the Civil Rights

Act of 1866 because [the amended complaint] fails to specify that Plaintiffs were denied

access to owning property and fails to allege any discriminatory intent on the part of

Defendants."[53] Defendants argue Plaintiffs "fail to allege facts to demonstrate a 42 U.S.C.

§ 1985 conspiracy."[54] As to Plaintiffs' state law negligence and intentional infliction of

emotional distress claims, Defendants argue most of the allegations in the amended

complaint are prescribed, and the remainder of the allegations "fail to identify adequate

conduct to support their claims."[55] The Court will address each of Plaintiffs' claims in turn.

## I.     Plaintiffs have sufficiently pleaded claims against Defendants under the Fair Housing Act.

The Fair Housing Act ("FHA")[56] "prohibits discrimination in the sale or rental of

housing."[57] "The FHA, as originally enacted in 1968, prohibited discrimination based on

race, color, religion, or national origin."[58] "In 1988, Congress extended coverage to

persons with handicaps and also prohibited 'familial status' discrimination, i.e.,

discrimination against parents or other custodial persons domiciled with children under

the age of 18."[59] "The provisions of 42 U.S.C. [§] 3604 are to be given broad  and liberal

construction, in keeping with Congress' intent in passing the Fair Housing Act of

replacing racially segregated housing with 'truly integrated and balanced living

patterns.'"[60] Section 3604(a) makes it unlawful to "refuse to sell or rent after the making

---

[53] R. Doc. 26-1, p. 17.
[54] *Id.*
[55] *Id.* at pp. 17–18.
[56] 42 U.S.C. §§ 3601–3631.
[57] *Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*, No. CIV.A.3:02-CV-0631-L, 2002 WL 32359947, at *2 (N.D. Tex. Oct. 18, 2002), *aff'd sub nom., Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*, 72 F. App'x 35 (5th Cir. 2003).
[58] *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 728 n.1 (1995).
[59] *Id.* (citing 42 U.S.C. § 3602(k)).
[60] *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) (quoting *Trafficanti v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972)).

of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ."[61] Section 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . ."[62] 42 U.S.C. § 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, . . . any right granted or protected by section . . . 3604."[63]

Courts within the Fifth Circuit have recognized that § 3604 liability may extend to Defendants who "otherwise make unavailable or deny, a dwelling to any person" because of a protected characteristic, even if the discriminatory conduct occurred after the purchase or acquisition of housing.[64] A plaintiff's claims under the unavailability portion of the Fair Housing Act, provided for in § 3604(a), may rely on post-acquisition conduct, such as eviction or constructive eviction, so long as the claims allege that defendants'

---

[61] 42 U.S.C. § 3604(a).

[62] § 3604(b). Section 3604 also includes the following provisions: "§ 3604(c) (making it unlawful to print or publish discriminatory statements with respect to sale or rental of a dwelling); § 3604(f)(3)(B) (making it unlawful to discriminate because of a handicap); and § 3617 (making it unlawful to coerce, intimidate, threaten, or interfere with a person based on his aiding or encouraging another in the exercise or enjoyment of fair housing rights)." *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 728 (S.D. Tex. 2010).

[63] 42 U.S.C. § 3617. In the Fifth Circuit, § 3617 claims "require an underlying violation of §§ 3603, 3604, 3605, or 3606." *Downing v. Pondugula*, No. 4:21-CV-1006-P, 2022 WL 1117446, at *4 (N.D. Tex. Mar. 29, 2022), *report and recommendation adopted*, No. 4:21-CV-1006-P-BJ, 2022 WL 1117203 (N.D. Tex. Apr. 14, 2022); *McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355 (5th Cir. 2001) ("Because [Plaintiff's] § 3605 claim fails, [his] claim under § 3617 must also fail."); *but see Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004) (affirming dismissal of a § 3604 claim but reversing and remanding on dismissal of § 3617 claim based on an alleged pattern of harassment of plaintiffs on the basis of religion in a subdivision). A plaintiff must show a causal connection between the harassment endured and "their attempts to exercise their rights under the FHA." *Hood v. Pope*, 627 F. App'x 295, 300 (5th Cir. 2015). In their motion to dismiss, Defendants do not seek dismissal of Plaintiffs' § 3617 harassment claim. Therefore, the Court will not address this claim.

[64] *See Cox v. City of Dallas*, 430 F.3d 734, 741 (5th Cir.2005); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 593 F. Supp. 3d 422, 437-38 (E.D. La. 2022); *see Evans v. Tubbe*, 657 F.2d 661 (5th Cir. 1981) (holding there were sufficient allegations of discrimination under § 3604(a) when a neighbor locked a gate across an access road, preventing a Black landowner from accessing the road, and therefore his land, while providing the keys to White residents).

conduct negatively affected the availability of the housing, not just the value or habitability of the housing.[65] Constructive eviction may exist when habitability "has so decreased that continued residency is not objectively reasonable."[66]

Fifth Circuit courts have recognized that "[a]mong the conduct to which § 3604(b) applies are threats to evict and actual or constructive eviction."[67] Further, a plaintiff also may allege a "hostile environment" claim under § 3604(b) by alleging facts to show that a defendant's conduct created a hostile environment, altering the original terms, conditions, or privileges on the use of the dwelling.[68] Courts assess whether defendant's alleged conduct constitutes "harassment [that is] discrimination . . . [that] amounts to [imposing] different terms, conditions, or privileges on the use of a dwelling."[69]

A plaintiff may also state a claim under the FHA by sufficiently alleging that a defendant discriminated against the plaintiff "in the provision of services or facilities in connection" with the sale or rental of housing.[70] To survive a motion to dismiss under § 3604, plaintiffs must allege facts to demonstrate that Defendants' discrimination affected

---

[65] *Cox*, 430 F.3d at 741-42 ("[T]he simple language of § 3604 does not apply to current homeowners whose complaint is that the value or 'habitability' of their houses has decreased because such a complaint is not about 'availability' . . . . This is not to say that a current owner has no claim for attempted and unsuccessful discrimination relating to the initial sale or rental of the house . . . . And it is not to say that a current owner or renter evicted or constructively evicted from his house does not have a claim [under § 3604(a)].").

[66] *Id*. at 742 n.21.

[67] *Hood*, 627 F. App'x at 298. *Woods–Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) ("[D]efendant's conduct-threatening to evict plaintiffs . . . is prohibited by the express terms of the Fair Housing Act. 42 U.S.C. § 3604(b) reads . . . '(I)t shall be unlawful . . . to discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of race.'"); *see also Cox*, 430 F.3d at 746 ("[Section] 3604(b) may encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental or for actual or constructive eviction.").

[68] *See, e.g.*, *Monus v. Riecke*, No. 21-218, 2021 WL 1721010, at *3 (E.D. La. Apr. 30, 2021) ("A plaintiff can state a claim under § 3604(b) by alleging that a landlord's sexual harassment altered the terms, conditions, or privileges on the use of a dwelling.").

[69] *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 650 (E.D. La. 2019) (citing *Quigley v. Winter*, 598 F.3d 938, 946-47 (8th Cir. 2010)); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008-09 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1088-90 (10th Cir. 1993)). Courts have denied motions to dismiss of FHA claims under a sexual harassment theory under § 3604(b).

[70] *Cox*, 430 F.3d at 745.

the availability of housing.[71] "To state a claim under the FHA, plaintiffs must allege facts that make it plausible, rather than merely conceivable, that the defendants' conduct fell within the terms of the statute."[72] "To prove that an action was discriminatory under § 3604, a plaintiff must establish (1) that defendant's stated reason for its decision was pretextual, and (2) a reasonable inference that race was a significant factor in the refusal."[73]

Plaintiffs assert claims under the Fair Housing Act, § 3601 et seq., stating that "§ 3604 makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[74] Plaintiffs allege the Defendants "discriminated against Plaintiffs in the provision of services or facilities in connection with the initial sale of their home based on race, in violation of 42 U.S.C. § 3604."[75]

Defendants argue that Plaintiffs fail to allege an FHA claim because "none of their allegations relate to the purchase of their home . . . . all allegations occurred after Plaintiffs purchased their property."[76] Defendants argue that, because Plaintiffs failed to allege they

---

[71] *See Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 728-30 (S.D. Tex. 2010) (analyzing §§ 3604(a)-(c) claims together at the motion to dismiss stage).

[72] *Hood*, 627 F. App'x at 298. To state a prima facie case under the FHA, the plaintiffs must prove 1) they are members of a protected class under the Fair Housing Act; 2) they were qualified to rent or purchase housing; 3) the defendant acted adversely toward them through either rejecting the application, offer, or otherwise making the housing unavailable, and 4) the housing remained open to other similarly situated individuals. *Mandawala v. Struga Mgmt.*, No. 21-50644, 2023 WL 2712500, at *4 (5th Cir. Mar. 30, 2023) (citing *Crain v. City of Selma*, 952 F.3d 634, 640-41 (5th Cir. 2020)); *see Treece*, 593 F. Supp. 3d at 439 (noting that "[t]he elements of a prima facie case vary depending on the facts and claims of the case," and where the Plaintiffs allege facts that Defendant made the housing unavailable to Plaintiffs, a court assesses whether "3) Defendants made housing unavailable through threats or acts to evict the [plaintiffs]; and 4) housing . . . and its amenities remained open to other similarly situated individuals.").

[73] *Hood*, 627 F. App'x at 298.

[74] R. Doc. 18, p. 3; In their opposition, Plaintiffs argue that under § 3604(b), Defendants discriminated against Plaintiffs in the terms, conditions, privileges, or in the provision of services or facilities in connection with the sale of housing.

[75] *Id.* at p. 5.

[76] R. Doc. 26-1, p. 4.

were denied the ability to purchase their home, they have failed to allege any discrimination in the sale of their home that would qualify as a FHA violation.[77] In opposition, Plaintiffs argue that the FHA also applies to "matters involving post sale or rental discrimination so long as it relates to the initial sale or lease," such as "actual or constructive eviction."[78] Plaintiffs further argue that the alleged discrimination relates to the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," and that "[t]he question of whether Defendants' conduct relates to the initial sale of Plaintiffs' home is a matter for the trier of fact."[79]

The Court finds the Plaintiffs have sufficiently alleged facts to support their claims under the FHA. Plaintiffs' allegations—which the Court must accept as true at this stage of the proceedings—include claims that Defendants discriminated against Plaintiffs on the basis of race through excessive fining, barring their access to the community, threatening liens, and other harassing conduct.[80] First, Plaintiffs, who are African American, are members of a protected class under the FHA.[81] Second, Plaintiffs allege they purchased a lot and built their home in the Moorings of Oak Harbor, and The Moorings approved Plaintiffs' building plans prior to construction.[82]

Third, Plaintiffs have sufficiently alleged facts to show that Defendants made housing unavailable to Plaintiffs. Plaintiffs have alleged that Defendants deactivated their

---

[77] *Id.* at p. 5.
[78] R. Doc. 29, p. 3.
[79] *Id.* at pp. 4-5.
[80] *See Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 727 (S.D. Tex. 2000) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972)) ("The Fair Housing Act is 'broad and inclusive' in protecting against conduct which interferes with fair housing rights and is subject to 'generous construction.'").
[81] R. Doc. 18, p. 2.
[82] *Id.*

community entry decal,[83] threatened to put liens on their property, and levied substantial fines against them totaling over $22,000.[84] Plaintiffs have alleged that Defendants called the police to report Plaintiffs, broke into the Plaintiffs' home or were involved in instructing others to do so, and otherwise have engaged in a conspiracy of racial harassment and discrimination since Plaintiffs moved into their home.[85] Plaintiffs allege facts sufficient to demonstrate that Defendants have acted to prevent Plaintiffs from accessing the community, and that the Defendants have substantially fined Plaintiffs while not doing the same to White residents who they allege also have violated homeowners association policies. Courts have denied motions to dismiss claims made under the FHA when defendants disconnected the plaintiff condo-owners' phone service, disabled a gate access point which plaintiffs used for entry into the complex, threatened to fine plaintiffs, and otherwise made areas of the condo building unavailable to plaintiffs.[86] The Court rejects Defendants' arguments that actionable claims under the FHA involve only pre-purchase activity.[87] The Court finds that Plaintiffs' allegations, taken as true, sufficiently state a claim that Defendants made housing unavailable to Plaintiffs.

Fourth, in the context of the facts of this case, Plaintiffs have adequately alleged

---

[83] *Id.* at p. 5.

[84] *Id.* at p. 8, 11.

[85] *Id.* at pp. 6-7. Plaintiffs allege in their amended complaint that Felger assumed Plaintiff was the contractor because he was African-American and drove a pickup truck. *Id.* at p. 6. Plaintiffs allege that the discrimination and harassment occurred shortly after construction began, and that Defendants did not know Plaintiffs' identity until after closing. *Id.*

[86] *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729-30 (S.D. Tex. 2010). In *Petty*, the court analyzed plaintiffs' claims under a "housing unavailability theory" under both §§ 3604(a)-(b) and denied the motion to dismiss.

[87] *See Padgett v. Texas Reg'l Asset Mgmt. LLC*, No. 5:18-CV-396-OLG, 2019 WL 13254312, at *3 (W.D. Tex. Mar. 6, 2019) (describing that the *Cox* and *Hood* holdings leave open the possibility of constructive eviction claims under the FHA) ("The Court finds that Plaintiffs' claims are not subject to dismissal simply because the discriminatory acts they allege occurred post-acquisition."); *see, e.g.*, *Hughes v. Bouchon Props. LLC*, No. CV 24-103, 2024 WL 2784626 (E.D. La. May 30, 2024) (denying a motion to dismiss on a FHA race discrimination claim on the basis of an alleged eviction).

facts to show Defendants' discrimination was on the basis of Plaintiffs' race. Plaintiffs have alleged that Defendants did not act to limit or make unavailable housing to White residents.[88] Plaintiffs have alleged that the discriminatory conduct only began once Defendants learned of Plaintiffs' race.[89] Though Defendants argue all actions taken against Plaintiffs, including the levying of fines, resulted from Plaintiffs' violations of The Moorings community restrictions, Plaintiffs have alleged that White residents were not fined for the same violations, nor were their entry decals deactivated.[90] Plaintiffs also allege that Defendants were aware of the many White residents who violated The Moorings' policies, but Defendants chose not to enforce these violations. Plaintiffs allege that Defendants issued notices of violations that contained photos showing evidence of the violations underlying the fines.[91] Plaintiffs allege that, in the notices, Defendants intentionally cropped the photos to remove evidence of neighboring homes owned by White residents who had the same violations.[92] Taking these allegations as true, the Court finds Plaintiffs have alleged facts to support an inference that race was a significant factor in Defendants' unequal enforcement of The Moorings' policies and guidelines.[93] Thus, Plaintiffs have sufficiently pleaded facts to support a claim that Defendants have racially discriminated against Plaintiffs under the Fair Housing Act.

---

[88] *See Evans v. Tubbe*, 657 F.2d 661, 662 (5th Cir. 1981) (vacating dismissal of a FHA claim where plaintiff alleged that "[defendant] erected a metal gate across the road and placed a lock upon the gate, thereby preventing [plaintiff] from reaching and using her property. [Defendant] gave a key to the gate to all of the White people who own property along the road, but refused to give a key to [plaintiff].").
[89] R. Doc. 18, p. 6.
[90] *Id.* at pp. 5, 8-10.
[91] *See id.* at pp. 9-10.
[92] *Id.*
[93] *See Hood v. Pope*, 627 F. App'x 295, 298 (5th Cir. 2015).

## II.     Plaintiffs have sufficiently pleaded Civil Rights Act claims under § 1981 and § 1982.

Sections 1981 and 1982 provide an independent cause of action against private, non-governmental actors for discrimination on the basis of race.[94] Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.[95]

Section 1981(b), in turn, defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[96] Section 1982 protects interests in property, providing that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."[97] The Fifth Circuit often construes § 1981 and § 1982 in tandem[98] and broadly interprets the rights these antidiscrimination laws protect.[99]

To state a claim under § 1981 and § 1982, a plaintiff must allege: (1) that he or she is a member of a racial minority; (2) that the defendant had an intent to discriminate on the basis of race, and (3) that the discrimination concerned one or more of the activities

---

[94] 42 U.S.C. §§ 1981-1982. *See, e.g., Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001); *see also Patterson v. McLean Credit Union*, 485 U.S. 617, 620 (1988); *Gallentine v. Housing Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 807–08 (E.D. Tex. 2013); *Charles v. Galliano*, No. 10-811, 2010 WL 3430519, at *4 (E.D. La. Aug. 26, 2010); *Williams-Boldware v. Denton Cnty.*, No. 4:09-cv-591, 2010 WL 2991164, at *5 (E.D. Tex. June 15, 2010).
[95] § 1981(a).
[96] § 1981(b).
[97] 42 U.S.C. § 1982.
[98] *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 700 (5th Cir. 2024) (citing *Williams v. Dillard's Dep't Stores, Inc.*, 211 F. App'x 327, 329 (5th Cir. 2006)).
[99] *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1016 (5th Cir. 2023) ("This circuit has . . . interpreted § 1981 in a broad sense.").

enumerated in the statute.[100] With respect to the second factor, when the pleaded facts demonstrate disparate treatment, the plaintiff must allege facts showing that, at the hands of the defendant(s), he or she was purposefully treated differently from similarly situated individuals who were not members of the protected class.[101] "An allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the . . . claim.'"[102]

Defendants argue Plaintiffs' § 1981 and § 1982 claims must be dismissed because Plaintiffs do not adequately allege that they were denied the ability to engage in the protected activity of purchasing their home.[103] Defendants further argue that Plaintiffs failed to plead allegations of race-based discrimination beyond a speculative level.[104] Plaintiffs argue that § 1981 and § 1982 are entitled to a broad interpretation, and they protect "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" stemming from the original purchase of their home, including the governance of the homeowners association restrictions.[105] Plaintiffs argue they have sufficiently alleged discrimination on the basis of race through alleging inconsistent violation enforcement against Plaintiffs in comparison to other residents who are White.[106]

First, the Plaintiffs, African American, are members of a racial minority group.[107]

---

[100] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001); *see Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994); *Able Sec. and Patrol, LLC v. Louisiana*, 569 F. Supp. 2d 617, 632 (E.D. La. 2008).
[101] *See, e.g.*, *Hall v. Continental Airlines, Inc.*, 252 F. App'x 650, 653–54 (5th Cir. 2007); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001); *Taiyeb v. Farmer Ins. Grp.*, No. 4:01-CV-0103-E, 2001 WL 1478798, at *2 (N.D. Tex. Nov. 19, 2001).
[102] *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993)).
[103] R. Doc. 26-1, p. 11.
[104] *Id.*
[105] R. Doc. 29, p. 6.
[106] *Id.*
[107] R. Doc. 18, p. 2.

Second, the Plaintiffs allege that Defendants' actions affected both their contractual privileges and property interests under § 1981 and § 1982, respectively. Plaintiffs allege they executed a contract with The Moorings[108] when they purchased their lot and that Felger, Community Management, and The Moorings imposed discriminatory fines based on alleged violations and that the harassment of Plaintiffs has "prevented Plaintiffs from enjoying all of the benefits and privileges of their contractual relationship with The Moorings."[109] Plaintiffs also allege that Defendants' actions have interfered with their property rights and interests as homeowners in The Moorings of Oak Harbor.[110] Plaintiffs have sufficiently pleaded allegations that Defendants' actions have interfered with their rights, privileges, and benefits of contracting and owning property under § 1981 and § 1982 on the basis of their race.

Third, the Plaintiffs have adequately alleged facts to demonstrate circumstantially that Defendants enforced homeowners association restrictions and fines against the Plaintiffs while not enforcing the same restrictions against White residents, including two White board members of The Moorings.[111] These allegations support an inference of discrimination.[112] Plaintiffs allege Felger instructed Community Management employees

---

[108] *See Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000) ("The Supreme Court has suggested that in order to impose liability on a defendant under § 1981 for the discriminatory actions of a third party, the plaintiff must demonstrate that there is an agency relationship between the defendant and the third party.") (citing *Gen. Building Contractors Assoc. v. Pa. United Eng'rs and Constructors*, 458 U.S. 375, 393 (1982)).

[109] R. Doc. 18 at p. 13, 15.

[110] *Id.* at p. 15. Section 1982's express language relates to "real or personal property." Plaintiffs own real property, and Plaintiffs have alleged interference with the use of their property. *See Maldonado v. FirstService Residential, Inc.*, No. CV H-20-1484, 2021 WL 2517542, *5 (S.D. Tex. June 18, 2021).

[111] R. Doc. 18, p. 14. Plaintiffs allege violations at the homes of Campbell and Snipes, two alleged board members of The Moorings, went unenforced.

[112] *See, e.g.*, *Madison v. Courtney*, No. 3:17-CV-01705-O, 2018 WL 9299219 (N.D. Tex. Apr. 24, 2018) (denying a motion to dismiss based on circumstantial evidence of unequal treatment on the basis of race) ("The Court finds that Plaintiff has circumstantially alleged that Defendant . . . intended to discriminate against Plaintiff because he was African-American. . . . Specifically, Plaintiff alleges that he was the only African-American passenger in first class, and that [defendant] rendered first-class coat and drink service to every passenger except Plaintiff, only spoke disrespectfully to Plaintiff, and only contaminated Plaintiff's drink.").

to fine Plaintiffs for having a visible slab due to their pending pool construction, while White neighbors were not fined for also having visible slabs.[113] Plaintiffs allege they were fined for not having their garbage can screened, while White neighbors were not fined for the same violation.[114] Plaintiffs allege Felger instructed Community Management employees to fine Plaintiffs for having a visible water hose, while White residents were not fined for having visible water hoses.[115] Plaintiffs allege that Defendants, at Felger's instruction, deactivated Plaintiffs' entry decal as a result of their growing fines, but Defendants did not deactivate entry decals of White residents who violated The Moorings restrictions.[116] Plaintiffs further allege that some of the levied violations were "frivolous," including some citations for pilings[117] on their property as a result of the approved pool construction.[118]

In *Maldonado v. FirstService Residential, Inc.*, the district court for the Southern District of Texas denied a motion to dismiss of the plaintiffs' § 1981, § 1982, and § 1985 claims.[119] The *Maldonado* plaintiffs alleged that defendants, a homeowners association, individual board members, and the property management company, "conspired to discriminatorily enforce deed restrictions solely against" plaintiffs, such as through enforcing parking restrictions against plaintiffs, but not against White residents.[120] The

---

[113] R. Doc. 18 at pp. 8-9.

[114] *Id.* at pp. 9-10. Plaintiffs also allege that the violation notices they received included cropped images which excluded the evidence of unscreened garbage cans at neighboring White neighbors' homes.

[115] *Id.* at p. 14.

[116] *Id.*

[117] Plaintiffs allege these citations were issued at the instruction of Felger. *Id.* at p. 8.

[118] *Id.* at p. 7. Plaintiffs further allege that the pattern of discrimination began upon Defendants realizing that Plaintiffs were African American, which did not occur until after Plaintiffs closed on their home and had their construction plans approved. For example, Plaintiffs allege Felger and Campbell "assumed Plaintiff was the contractor simply because he was African-American and drove a black pick-up truck." *Id.* at p. 6.

[119] *Maldonado v. FirstService Residential, Inc.*, No. CV H-20-1484, 2021 WL 2517542 (S.D. Tex. June 18, 2021).

[120] *Id.* at *1-4.

district court held that the plaintiffs adequately alleged discrimination under their homeowners association plan, in violation of § 1981, and discrimination and interference with the use of their property under § 1982.[121] The court also analyzed whether plaintiffs' factual allegations demonstrated that each defendant intended to discriminate based on race.[122] The court held that plaintiffs sufficiently alleged facts to demonstrate that defendants, comprised of a homeowners' association, property management company, board members, and other employees, "acted with discriminatory intent" because the "defendant[s] depart[ed] from standard practice only for members of a racial minority."[123] The court reasoned that, because the plaintiffs alleged specific instances when White residents were allowed to violate community restrictions, defendants did not enforce rules and bylaws against White residents.[124] Because plaintiffs alleged evidence of a racial remarks by defendants, they sufficiently pleaded that defendants acted with discriminatory intent in violation of § 1981 and § 1982.[125]

The Court finds *Maldonado* instructive and similarly holds that Plaintiffs have sufficiently pleaded facts demonstrating an inference of discriminatory treatment based on unequal homeowners association restriction enforcement against Plaintiffs, but not

---

[121] *Id.* at *4-5 ("[T]he defendants have issued them warnings and tickets and threatened legal action that white residents do not receive. The [plaintiffs] plausibly alleged interference with the use of their property."); *see City of Memphis v. Greene*, 451 U.S. 100, 120 (1981) ([S]ection 1982 "protect[s] not merely the enforceability of property interests acquired by [minority] citizens but also their right to... use property on an equal basis with white citizens.").

[122] *Maldonado*, 2021 WL 2517542, at *5.

[123] *Id.*

[124] *Id.* at *5-6.

[125] *Id.* The court found sufficient evidence of discrimination against all defendants but one individual, who only referred to plaintiffs as "those people," which was not sufficient evidence of discriminatory intent. *Id.* at *7. The court relied on authority recognizing that inconsistent enforcement and disparate treatment could support a finding that plaintiffs adequately pled allegations of discriminatory intent under § 1981 and § 1982. *See Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227-28 (W.D. Wash. 2012) (declining to dismiss § 1981 and § 1982 claims against a homeowners' association based on allegations of disparate enforcement of deed restrictions due to the plaintiff's race); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role.").

against White residents.

## III.  Plaintiffs have sufficiently pleaded a conspiracy claim under § 1985(3).

Section 1985(3) prohibits conspiracies that deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws."[126] "To plead a claim under § 1985(3), a plaintiff must plead sufficient facts to plausibly show: (1) the existence of a conspiracy; (2) for the purpose of depriving a person or class of the equal protection of the laws, (3) acts in furtherance of the conspiracy; and (4) injury to the person or property or deprivation of a right of a United States citizen."[127] When a plaintiff brings a conspiracy claim based on racial animus, the plaintiff must allege sufficient facts showing the defendants conspired to discriminate against the plaintiff on the basis of his or her race.[128] Courts within the Fifth Circuit have held that to successfully plead a 1985(3) claim, the complaint requires a showing of racial animus.[129] The Fifth Circuit instructs that a plaintiff must plead facts beyond conclusory allegations that the Defendants conspired to discriminate against the plaintiff based on race.[130] A plaintiff must affirmatively "allege

---

[126] 42 U.S.C. § 1985(3).

[127] *Maldonado*, 2021 WL 2517542, at *7 (citing *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 446 (5th Cir. 2006)).

[128] *Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002); *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Kush v. Rutledge*, 460 U.S. 719, 725-26, (1983); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, (1993); *see also Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) ("The 'language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or . . . class-based, invidiously discriminatory animus behind the conspirator's action.'").

[129] *See Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit ... the only conspiracies actionable under section 1985(3) are those motivated by racial animus."); *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010). Other courts have left open the possibility that a plaintiff may be able to bring a 1985(3) claim on the basis of other class-based animus based on the interpretation of language in § 1985. *See Cervini v. Cisneros*, 593 F. Supp. 3d 530, 536-38 (W.D. Tex. 2022) (analyzing Supreme Court and Fifth Circuit precedent on § 1985 and denying a motion to dismiss of a § 1985(3) claim and holding that "the election advocacy portion of § 1985(3) does not require Plaintiffs to plead racial or other class-based animus.").

[130] *See Duncan v. United Servs. Auto. Ass'n Ins.*, No. CV 14-2989, 2016 WL 3952091, at *7 (E.D. La. July 22, 2016) (dismissing a § 1985(3) claim when a plaintiff alleged he faced "harsh treatment" on the basis of race, but did not plead facts beyond conclusory allegations to support his claim).

facts that suggest an agreement among the alleged co-conspirators."[131] With respect to the "conspiracy" aspect of the cause of action, courts in the Fifth Circuit have held that a plaintiff may successfully plead a claim under § 1985(3) by sufficiently pleading claims under § 1981 and § 1982 when the facts underlying those claims allege a conspiracy.[132]

Defendants argue that the § 1985 cause of action "does not apply to this case" because the statute originally was part of the "Ku Klux Klan Act."[133] Defendants argue that "Plaintiffs' attempt to frame their grievances about being fined by their property owners' association as a viable claim under this statute is disingenuous and defies credulity."[134] Further, Defendants argue that Plaintiffs fail to allege more than conclusory statements that any conspiracy existed between the Defendants.[135] In opposition, Plaintiffs argue they pleaded facts to demonstrate that the Defendants "agreed to enforce community restrictions only against Plaintiffs based on their race for the sole purpose of depriving Plaintiffs of their housing rights, civil rights, and equal rights and benefits afforded under the contract executed by Plaintiffs and The Moorings."[136]

Taking the allegations in the amended complaint as true and in the light most favorable to Plaintiffs,[137] Plaintiffs have sufficiently pleaded facts to demonstrate that The Moorings, Community Management, and Felger conspired to discriminate against the

---

[131] *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 389 (5th Cir. 2017) (citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994)).
[132] *Maldonado*, 2021 WL 2517542, at *7 (Because the [plaintiffs] sufficiently alleged that [defendants] conspired to violate[] § 1981 and § 1982, the [plaintiffs] sufficiently allege a claim under § 1985(3) against [defendants].").
[133] R. Doc. 26-1, p. 12.
[134] *Id.*
[135] *Id.* at p. 13.
[136] R. Doc. 29, p. 7.
[137] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiffs on the basis of their race.[138] Plaintiffs allege that Defendants enforced homeowners association restrictions against Plaintiffs on the basis of their race while refusing to enforce similar violations against White residents.[139] As described above, Plaintiffs have alleged that Defendants levied fines for violations, totaling over $22,000, against Plaintiffs while not enforcing the same violations against White residents.[140] Plaintiffs also allege that board members of The Moorings voted to increase the fine amounts for violations issued to Plaintiffs.[141] Plaintiffs allege that Felger instructed Community Management employees to deactivate Plaintiffs' entry decals while not deactivating the decals of White residents who violated homeowners association restrictions.[142] Plaintiffs allege that Defendants cropped photos in the violation notices to purposefully exclude evidence of the same violations at neighboring White residents' homes.[143] Plaintiffs also allege that Felger, Campbell, and The Moorings conspired with other neighbors to enable WI-FI jammers to disable Plaintiffs' surveillance cameras around the time Plaintiffs' home was allegedly burgled.[144] And, as reasoned for Plaintiffs' § 1981 and § 1982 claims, these facts, accepted as true, permit the Court to reasonably infer that Felger, Community Management, and The Moorings acted in concert to enforce fines for violations of community restrictions, based on an inference of racial animus, against Plaintiffs while not enforcing the same violations against White residents.[145] The

---

[138] Plaintiffs also allege unidentified neighbors used racist epithets towards Plaintiffs, and The Moorings board agenda items "address[ed] the problem of loud and vulgar music being played by certain residents." R. Doc. 18, p. 11, 22. The Court notes these allegations in connection with Plaintiffs' conspiracy claims.
[139] *Id.* at p. 16.
[140] *Id.* at p. 11.
[141] *Id.* at p. 17.
[142] *Id.*
[143] *Id.*
[144] *Id.* at pp. 17-18.
[145] *See Maldonado v. FirstService Residential, Inc.*, No. CV H-20-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) ("Because the [plaintiffs] sufficiently alleged that [defendants] conspired to violated § 1981 and § 1982, [they] sufficiently allege a claim under § 1985(3)") (citing *Cho v. Itco, Inc.*, 782 F. Supp. 1186, 1187 (E.D. Tex. 1992)).

Court finds Plaintiffs have plausibly alleged a § 1985(3) claim.[146]

## IV.   Plaintiffs' state law tort claims are not facially prescribed.

A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint."[147] When a "plaintiff's claims are prescribed on the face of the petition, plaintiff has the burden of proving the claims are not prescribed."[148] At the motion to dismiss stage, a court may dismiss a claim when the complaint "on its face show[s] a bar to relief."[149]

State law claims occurring before July 1, 2024[150] for intentional or negligent infliction of emotional distress and other negligence are governed by the one-year prescriptive period for delictual actions set forth in Louisiana Civil Code article 3492.[151] While article 3492 specifies that the one-year prescriptive period begins to run on the date the injury or damage is sustained,[152] the Louisiana Supreme Court has applied a continuing tort theory of prescription to claims for intentional infliction of emotional distress when the plaintiff alleges "a pattern of on-going, repeated harassment which gradually causes [him or] her serious emotional injury."[153] In such cases, prescription does not begin to run until the complained-of conduct abates.[154]

---

[146] *See id.*

[147] *Cranner v. Coletti*, No. CIV.A. 13-6681, 2014 WL 1407328, at *2 (E.D. La. Apr. 10, 2014).

[148] *Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co.*, No. CV 17-0200, 2018 WL 2209165, at *4 (W.D. La. May 11, 2018*), aff'd sub nom., Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 F. App'x 289 (5th Cir. 2019).

[149] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[150] The Louisiana Legislature has since repealed Article 3492, effective July 1, 2024, and has passed Act 423, extending the liberative prescription period for delictual actions to two years for actions occurring after July 1, 2024. LA. C. C. ART. 3493.11 ("Delictual actions are subject to a liberative prescription of two years . . . . The provisions of this Act shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act."). LA. C.C. ART. 3493.12.

[151] *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999).

[152] *See* LA. C.C. ART. 3492.

[153] *Bustamento v. Tucker*, 607 So. 2d 532, 537–40 (La. 1992).

[154] *Id.*

Defendants argue that, with respect to Plaintiffs' state law claims of negligence and intentional infliction of emotional distress, "most of allegations in Plaintiffs' complaint occurred over one year prior to the filing of Plaintiffs' suit and are barred by prescription."[155] Defendants argue that the two incidents when residents of The Moorings called the police occurred in March and May of 2022, and the alleged home break-in occurred in August 2022.[156] Defendants argue these three events occurred more than one year prior to the filing of the complaint.[157] Defendants argue that, under article 3492, which provides a one-year liberative prescription period for Louisiana delictual actions, Plaintiffs' claims have prescribed, and "[t]he remaining actions in the Complaint lack a specific timeframe."[158]

Plaintiffs admit that these three events occurred over a year before they filed suit, but agree their tort claims are not prescribed based on the "continuing violations doctrine."[159] Plaintiffs argue that "each of the acts and omissions raised were part of an organized scheme leading up to and including the January 25, 2024 demand for payment."[160] Plaintiffs further argue that much of Defendants' conduct alleged in Plaintiffs' amended complaint "occurred less than one year before the Complaint was filed," and all of the activity was "in furtherance of a conspiracy to discriminate based on race."[161]

Plaintiffs allege that they began construction of their home on November 2, 2021.[162] Plaintiffs allege Defendants' discriminatory conduct began in 2022, with three incidents

---

[155] R. Doc. 26-1, p. 14, 16.
[156] *Id.*
[157] *Id.*
[158] *Id.*
[159] R. Doc. 18, p. 22.
[160] R. Doc. 29, p. 8.
[161] *Id.* at p. 9.
[162] R. Doc. 18, p. 4.

occurring on March 27, 2022,[163] May 7, 2022,[164] and August 15, 2022.[165] Plaintiffs allege the remaining acts occurred "after [Plaintiffs moved] into the community" in February 2023.[166] Plaintiffs allege that Defendants fined Plaintiffs throughout 2023, and Defendants deactivated Plaintiffs' entry decal on August 24, 2023 and on October 29, 2023.[167] Plaintiffs allege that Defendants issued a final demand for payment of the fines on January 25, 2024.[168] Plaintiffs filed their complaint on January 30, 2024.[169] In their amended complaint, Plaintiffs assert that the Defendants' acts "were part of an organized scheme leading up to and including the January 25, 2024 demand for payment," beginning with the call to police made by Campbell on May 7, 2022,[170] and extending throughout the course of the year 2023 after Plaintiffs moved into their home.[171] Because "plaintiffs' [amended complaint] alleges a continuous course of conduct that extended to less than one year before suit was filed, plaintiffs' action is not facially prescribed, and the burden of proof remains with the defendant to establish prescription."[172] The Court finds Plaintiffs' claims of "an organized scheme"[173] of discrimination and harassment as an alleged "continuous course of conduct" leading up to the 2024 payment demand are not facially prescribed. Defendants have not otherwise established that Plaintiffs' intentional infliction of emotional distress and negligence claims are prescribed.

---

[163] *Id.* at p. 7 (incident where an unidentified neighbor called police on Plaintiffs).

[164] *Id.* at p. 6 (incident where Campbell called police on Plaintiffs for contractors who were double-parked).

[165] *Id.* at p. 7 (date of the alleged burglary committed by unidentified White neighbors and when Defendants allegedly disabled Plaintiffs' security cameras).

[166] *Id.* at p. 4, 7.

[167] *Id.* at p. 5.

[168] *Id.* at p. 11.

[169] R. Doc. 1.

[170] Because Plaintiffs allege that the "organized scheme" began with Campbell's police call in May 2022, they appear to concede that the March 2022 police call made by the unidentified neighbor is not a part of the alleged conspiracy. *Id.* at p. 22.

[171] *Id.*

[172] *Allbritton v. Int'l Mins. & Chem. Corp.*, No. CIV.A. 06-0774, 2007 WL 3146249, at *6 (W.D. La. Oct. 24, 2007) (citing *Bustamento v. Tucker*, 607 So.2d 532, 542 (La.1992)).

[173] R. Doc. 18, p. 22.

**V.    Plaintiffs have not sufficiently alleged a state law intentional infliction of emotional distress claim.[174]**

To establish an intentional infliction of emotional distress claim, a plaintiff "must establish (1) that the conduct of the . . . Defendants was extreme and outrageous; (2) that the emotional distress suffered by [Plaintiffs] was severe; and (3) that the . . . Defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct."[175] Extreme and outrageous conduct is that which exceeds "all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community."[176] "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."[177]

Defendants argue that in the amended complaint, Plaintiffs fail to "include adequate factual allegations or details supporting their claim for" intentional infliction of emotional distress.[178] Defendants further argue that Plaintiffs' allegations do not rise to the level of "extreme and outrageous conduct" under Louisiana Supreme Court jurisprudence.[179]

Plaintiffs argue that "whether Defendants' conduct amounts to extreme and dangerous conduct and whether the distress suffered was severe are both within the province for the trier of fact to determine."[180] Plaintiffs allege that Defendants "intentionally engaged in extreme and outrageous conduct by 1) conspiring to deprive

---

[174] The Court will only address the IIED claims asserted against Community, The Moorings, and Felger, as Campbell has not joined this motion.
[175] *McPherson v. Ochsner Health Sys. Skilled Nursing Facility W. Campus*, No. CV 23-2433, 2024 WL 3742706, at *4 (E.D. La. Aug. 9, 2024) (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).
[176] *White,* 585 So. 2d at 1209.
[177] *Id.* at 1210.
[178] R. Doc. 26-1, p. 16.
[179] *Id.*
[180] R. Doc. 18, p. 22.

Plaintiffs of their equal rights and benefits under the community restrictions and covenants, 2) weaponizing the Sheriff's office by calling 911 to report Plaintiff,[181] 3) refusing to enforce violations by White homeowners, and 4) revoking or limiting access to the community without authority to do so."[182] Plaintiffs allege they suffered severe distress and anxiety, that they lost sleep due to fear over Defendants' conduct, and that they "endured nightmares" at the "mere thought of losing their dream home due to discrimination and harassment by Defendants."[183] Plaintiffs also allege they suffered severe distress while trying to get home to tend to an ill child when their entry decal to the community was deactivated, preventing them from accessing the subdivision to care for their child.[184] Furthermore, Plaintiffs allege Defendants conspired to unequally enforce The Moorings community restrictions against them on the basis of race, causing plaintiffs to "deeply fear losing their home due to unfairly assessed liens."[185]

The Court finds Plaintiffs have failed to adequately allege facts to support their intentional infliction of emotional distress claims against Defendants. In their amended complaint, Plaintiffs allege Defendants conduct was "extreme and outrageous" and "would not pass the boundaries of decency and would be utterly intolerable to civilized society."[186] Plaintiffs recite conclusory statements that "Defendants desired to inflict severe emotional distress" because "Defendants conspired amongst themselves . . . to harass and discriminate against Plaintiffs."[187] Viewing the allegations in the amended

---

[181] Because Plaintiffs allege that Campbell called the police on Plaintiffs on this occasion, the Court will not address this allegation in this order and reasons on the grounds that Campbell did not join the instant motion to dismiss.
[182] R. Doc. 18, p. 18.
[183] *Id.* at p. 19.
[184] *Id.*
[185] *Id.*
[186] *Id.* at p. 24.
[187] *Id.* at p. 19.

complaint in the light most favorable to Plaintiffs, Plaintiffs have not alleged sufficient, particular facts to demonstrate Defendants engaged in extreme and outrageous conduct,[188] *intentionally* acting to inflict emotional distress on Plaintiffs.[189] Liability for intentional infliction of emotional distress has typically been found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[190] Plaintiffs have not pleaded facts to show that Defendants acted outrageously, atrociously, or in ways that are "utterly intolerable in a civilized community,"[191] with the intent or knowledge that Plaintiffs would suffer emotional distress as a result of their conduct. Thus, Plaintiffs' intentional infliction of emotional distress claims will be dismissed.

## VI.   Plaintiffs have sufficiently alleged state law negligence claims.

To successfully plead a negligence claim, courts applying Louisiana law conduct a duty-risk analysis.[192] There are five elements of a negligence claim under Louisiana law:

---

[188] In *Maldonado v. FirstService Residential, Inc*., a factually analogous case discussed above, the district court dismissed Plaintiffs' IIED claims despite finding plaintiffs sufficiently plead claims under the FHA and CRA. Plaintiffs filed suit over defendants' unequal enforcement of homeowners association deed restrictions, similar to the Plaintiffs' allegations in this matter. The court held that "[t]he allegations as to [defendants] do not rise above 'indignities, threats, annoyances, [or] petty oppressions'" and were insufficient to support an IIED claim. No. CV H-20-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021).

[189] *See Mandawala v. Struga Mgmt*., No. 21-50644, 2023 WL 2712500 (5th Cir. Mar. 30, 2023) (affirming district court's dismissal of IIED claims against defendants, including apartment management company and staff, when the plaintiff, a Black resident of an apartment complex, alleged the defendants unlawfully withheld his packages and then initiated eviction proceedings against him; the court reasoned that plaintiff did not sufficiently allege facts to show this conduct was extreme and outrageous).

[190] *Fletcher v. Wendelta, Inc*., 999 So.2d 1223, 1230 (La. Ct. App. 2d. Cir. 2009).

[191] Plaintiffs allege Defendants conduct was "extreme and outrageous because the same would not pass the boundaries of decency and would be utterly intolerable to civilized society," but they do not allege specific facts to demonstrate this allegation. R. Doc. 18, pp. 18-19. *See Gomez v. Galman*, 18 F.4th 769, 781 (5th Cir. 2021) (affirming dismissal of a plaintiff's IIED claim against police officers who assaulted plaintiff during an arrest because plaintiff failed to allege the officers acted extremely and outrageously and failed to allege the officers intended to inflict severe emotional distress upon him).

[192] *See, e.g*., *Lemann v. Essen Lane Daiquiris, Inc*., 923 So. 2d 627, 632-33 (La. 2006) (citing *Mathieu v. Imperial Toy Corp*., 646 So.2d 318, 321 (La. 1994)).

duty, breach, factual causation, legal causation, and damages.[193] To survive a Rule 12(b)(6) motion, under the duty element, a plaintiff must allege a specific standard of care to which the defendant was required to conform his conduct.[194] "The inquiry into a defendant's particular duty 'is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'"[195] "The Fifth Circuit has recognized that Louisiana law may look to federal statutory and regulatory schemes in delineating the scope of a duty under the duty-risk analysis."[196] Additionally, under Louisiana law, "[n]egligent hiring and supervision is recognized as a cognizable tort."[197]

Plaintiffs assert negligence claims against The Moorings, Community Management, and Felger.

As to The Moorings, Plaintiffs assert claims based on negligent hiring, failure to train, and negligent supervision theories.[198] Plaintiffs allege that "The Moorings owed a duty to Plaintiffs to ensure that Plaintiffs' housing and civil rights were not violated by agents of The Moorings."[199] Plaintiffs allege that Community Management, Felger, and Campbell were "agents" of The Moorings.[200] Plaintiffs allege that The Moorings "breached

---

[193] *Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023); LA. C. C. ART. 2315.
[194] *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 444-45 (5th Cir. 2021) (affirming a district court's dismissal under Rule 12(b)(6) because the plaintiff failed to plead a standard of care governing his claims).
[195] *Id.* at 445.
[196] *Merrell v. 1st Lake Props., Inc.*, No. CV 23-1450, 2024 WL 640013, at *3 (E.D. La. Feb. 15, 2024) (citing *Bd. of Comm'rs of Se. La. Flood Prot. Auth. – East v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 727 (5th Cir. 2017) ("[T]his court has often held that violation of a federal law or regulation can be evidence of negligence.")).
[197] *Matthews v. United Fire & Cas. Ins. Co.*, 213 So. 3d 502, 506 (La. Ct. App. 4th Cir. 2017); *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. Ct. App. 5th Cir. 2009) ("When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee.").
[198] R. Doc. 18, pp. 20-21.
[199] *Id.* at p. 20.
[200] *Id.*

said duty by failing to train, monitor, and/or supervise Defendant . . . Felger, Defendant Community, and other agents working on behalf of The Moorings."[201] Plaintiffs allege that "The Moorings failed to ensure that" Felger, Community, and other agents "complied with the Fair Housing and Civil Rights Acts by allowing a conspiracy against Plaintiffs to take shape," and they failed to ensure its agents equally enforced community restrictions and covenants.[202] As to Community Management, Plaintiffs allege "Community [Management] is liable for negligence because it also failed to ensure that its employees and agents did not violate the housing and civil rights afforded to Plaintiffs."[203] Plaintiffs allege Community Management failed to train, monitor, or supervise its employees, and, as a result, its employees failed to comply with the Fair Housing Act and Civil Rights Act.[204] The amended complaint then alleges that "The Moorings and Community [Management] failed to take prompt action to correct or end their own discriminatory conduct, as well as the conduct of Felger, Campbell, and other employees or agents. Plaintiffs allege Defendants were aware that Plaintiffs were being subjected to extensive and unwelcome harassment based on race because it was orchestrated and coordinated by Defendants."[205]

As to Felger, Plaintiffs allege that Felger, as a Defendant, "subjected Plaintiffs to severe and pervasive harassment, threats, discrimination and intimidation because of race."[206] Plaintiffs allege that Felger "created a hostile environment that unreasonably interfered with Plaintiffs' right to use and enjoy their home."[207] Plaintiffs allege that Felger

---

[201] *Id.*
[202] *Id.*
[203] *Id.* at p. 21.
[204] *Id.*
[205] *Id.* at pp. 22-23.
[206] *Id.* at p. 22.
[207] *Id.* at p. 23.

29

negligently violated the Fair Housing Act and Civil Rights Act by acting to deprive Plaintiffs "of the equal rights and benefits afforded to them under the community restrictions and covenants."[208] Throughout their complaint, Plaintiffs emphasize that Felger instructed other employees to issue citations, deactivate Plaintiffs' entry decal,[209] disable Plaintiffs' security cameras,[210] and conspire to jam Plaintiffs' wifi.[211] They also allege he voted to increase fine amounts imposed on Plaintiffs.[212]

Plaintiffs allege that as a result of Defendants' negligent conduct, they were subjected to emotional distress and suffered other injuries.[213] Plaintiffs allege that Defendants[214] and other White neighbors subjected Plaintiffs to severe and pervasive harassment, threats, discrimination, and intimidation because of race," creating a hostile environment for Plaintiffs.[215] Plaintiffs allege that as a result of Defendants' conduct, they "suffered a violation of their fair housing rights, civil rights, loss of the use and enjoyment of their property, and emotional distress, including anxiety, fear, humiliation, and degradation."[216]

Defendants argue Plaintiffs' allegations of negligence "consist[] solely of conclusions of law, without any specific factual allegations to support the claim . . . ." and "Plaintiffs wholly fail to identify any specific injury caused by the alleged negligence . . . ."[217] Plaintiffs argue that because Defendants "point to no other pleading defects with

---

[208] *Id.* at p. 20.
[209] *Id.* at pp. 9-11, 14.
[210] *Id.* at p. 18.
[211] *Id.* at p. 17.
[212] *Id.*
[213] *Id.* at p. 21; *see* R. Doc. 29, p. 10.
[214] This allegation, on its face, implicates all Defendants, including Felger and Campbell.
[215] R. Doc. 18, p. 22.
[216] *Id.* at p. 23.
[217] R. Doc. 26-1, pp. 16-17.

respect to the remaining elements of negligence," their negligence claims should not be dismissed.[218]

The Court finds that Plaintiffs have adequately alleged facts to support their negligence claims against The Moorings, Community Management, and Felger. Plaintiffs have alleged that The Moorings and Community Management were responsible for hiring and training their employees and agents. Plaintiffs have alleged that The Moorings and Community Management had a "duty to ensure that Plaintiffs' housing and civil rights were not violated by agents of The Moorings."[219] Plaintiffs also have alleged Felger and Community Management acted on behalf of The Moorings.[220] Plaintiffs have alleged facts to show that Felger "orchestrated and coordinated"[221] the actions of other employees who fined and discriminated against Plaintiffs based on race in violation of the Fair Housing and Civil Rights Acts. Plaintiffs have alleged that The Moorings, Community Management, and Felger breached a duty by failing to ensure their employees and agents did not violate Plaintiffs' civil rights or "deprive Plaintiffs of the equal rights and benefits afforded to them under the . . . restrictions and covenants" where "employees [were to] enforce[] the . . . restrictions and covenants against all residents regardless of race."[222] Plaintiffs assert Defendants' negligent conduct caused them to suffer emotional distress and other injuries.[223]

---

[218] *Id.*

[219] R. Doc. 18, p. 20.

[220] *Id.* at p. 20.

[221] *Id.* at pp. 22-23.

[222] *Id.* at p. 21.

[223] *Id.* The allegations in Plaintiffs' complaint support claims for economic injury. Because the remaining elements of the duty-risk analysis are questions of fact, the Court "cannot decide them at this early stage." *Gomez v. Galman*, 18 F.4th 769, 781 (5th Cir. 2021) (citing *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231 (La. Ct. App. 5th Cir. 2000) ("The remainder of the questions under the duty-risk formula-breach of duty, cause-in-fact, scope of liability or scope of protection, and damages-are factual determinations by the trier of fact.")).

Therefore, the Court finds that accepting these factual allegations as true, Plaintiffs have satisfied the standard duty-risk analysis used to evaluate Louisiana negligence claims and their negligent infliction of emotional distress claims[224] at this stage.[225] The Court will not dismiss Plaintiffs' state law negligence claims.

**CONCLUSION**

**IT IS ORDERED** that the Motion to Dismiss[226] is **GRANTED IN PART and DENIED IN PART**.

Defendants' motion is **GRANTED** with respect to Plaintiffs' state law intentional infliction of emotional distress claims.

Defendants' motion is **DENIED** with respect to the Plaintiffs' Fair Housing Act, Civil Rights Act, and state law negligence claims.

**New Orleans, Louisiana, on this 17th day of September, 2024.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[224] *See Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1095 (La. 1990) (holding that generally, a defendant will not be liable under Louisiana law where the defendant's conduct was merely negligent and the emotional injury is unaccompanied by physical injury, subject to exceptions, including that the distress was a result of a separate tort involving consequences to a plaintiff's person or property). Plaintiffs allege they suffered emotional distress and "other injuries" as a result of Defendants' conduct, including economic injury. The Court finds these allegations sufficient to support their negligence claims at this stage.
[225] *See Louisiana Fair Hous. Action Ctr. Inc. v. Plantation Mgmt. Co. LLC*, No. CV 20-2339, 2022 WL 612719, at *8 (E.D. La. Mar. 2, 2022) (denying a motion to dismiss of a Fair Housing Act plaintiff's state law negligence claims on a negligent supervision theory).
[226] R. Doc. 26.